# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN ZANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 14-1651 |
| v. ) | |
| ) | |
| WESTERN PENNSYLVANIA ) | |
| TEAMSTERS AND EMPLOYEE ) | Judge Cathy Bissoon |
| WELFARE FUND, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

For the reasons that follow, the Motion for Summary Judgment (Doc. 14) filed by Western Pennsylvania Teamsters and Employee Welfare Fund ("Defendant") will be GRANTED, and judgment will be entered in favor of Defendant with respect to all claims asserted by Lauren Zang ("Plaintiff") in her Amended Complaint (Doc. 12).

### I. MEMORANDUM

Presently before the court is Defendant's August 31, 2015, Motion for Summary Judgment. Defendant seeks judgment as a matter of law with respect to all claims in Plaintiff's June 30, 2015, Amended Complaint. At Counts I through III, therein, Plaintiff asserts various causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), all stemming from her treatment while employed by Defendant.

To defeat Plaintiff's claims, Defendant's summary judgment motion focuses on whether Defendant is an "employer" as defined by the ADA, the FMLA and Title VII. Plaintiff contends that Defendant was an employer for ADA, FMLA and Title VII purposes during her employment, because she "worked with four co-workers, nine trustees and six consultants to perform her daily duties." (Doc. 12 at ¶¶ 18, 24, 30). Additionally, Defendant also is alleged to be a "division or 'local union' of the International Brotherhood of Teamsters, which employs thousands of employees across the country." (Doc. 12 at ¶¶ 18, 24, 30). Defendant's purported association with the International Brotherhood of Teamsters ("IBT") is particularly important, because whereas the ADA[1] and Title VII[2] require an "employer" to have only 15 employees, the FMLA[3] requires 50 employees. In response, Defendant argues that the trustees and consultants are not "employees," and that Defendant is not a division of the IBT; therefore, Defendant is not an "employer" under the ADA, FMLA, or Title VII. (Docs. 15 and 23).

---

[1] "The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person…"

42 U.S.C. § 12111(5)(A).

[2] "For purposes of this subchapter –

\*\*\*

    (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person…"

42 U.S.C. § 2000e(b).

[3] "The term "employer" –

    (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year…"

29 U.S.C. § 2611(4)(A)(i).

The Court will turn its attention first to the status of the aforementioned trustees. The trustees are a group of ten individuals tasked with the management of Defendant's trust estate. Defendant and the trust estate constitute a multiemployer benefit plan established by various unions and employers pursuant to a June 12, 1950 Agreement and Declaration of Trust ("Agreement"), last amended January 1, 2000. (Docs. 20 at ¶5; 17 at 25-89). Of the ten trustee positions created by the Agreement, five are appointed by consensus of the employer-signatories, and five are appointed by the union-signatories. (Docs. 17 at 42; 19 at 5). The Agreement sets the duties and responsibilities of the trustees in maintenance of the trust estate and administration of Defendant. (Doc. 17 at 51-66). The trustees receive no benefits or compensation other than reimbursement of monies expended by the trustees in furtherance of their duties. (Id. at 42).

It is Plaintiff's contention that these trustees were, in fact, employees of Defendant. As a basis for her assertion, Plaintiff notes that: (1) Defendant is responsible for appointing trustees, (2) the trustees are bound by Defendant's rules and regulations, and (3) the trustees are paid by Defendant. (Doc. 19 at 4-6). Both Plaintiff and Defendant agree that the holding in Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440 (2003), controls the disposition of this issue.

In Clackamas, the Supreme Court established a test for the determination of the employment status of a shareholder-director of a professional corporation. Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 763 (3d Cir. 2013). The Supreme Court's six factor test considers the following: "[1.] Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;" "[2.] Whether and, if so, to what extent the organization supervises the individual's work;" "[3.] Whether the individual reports to someone higher in the organization;" "[4.] Whether and, if so, to what extent the individual is able to

influence the organization;" "[5.] Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;" and "[6.] Whether the individual shares in the profits, losses, and liabilities or the organization." Id. at 766 (quoting Clackamas, 538 U.S. at 449-50). Whether a trustee in the present case may be considered an employee "'depends on all of the incidents of the relationship with no one factor being decisive.'" Id. at 767 (quoting Clackamas, 538 U.S. at 451). Of utmost importance in this determination – and the matters that the six factors are meant to address – are the trustees' degree of control and the source of the trustees' authority to control. Id. at 767-68 (citing Smith v. Castaways Family Diner, 453 F.3d 971, 983-84 (7th Cir. 2006)).

With respect to the first factor, is it clear that the organization, *i.e.* Defendant, cannot hire or fire the trustees, or set the rules and regulations according to which the trustees are expected to work. In fact, the trustees are empowered to hire any parties deemed necessary to aid in the administration of Defendant and the trust estate. (Doc. 17 at 57-58). The trustees further are empowered to adopt bylaws, rules and regulations deemed necessary to aid in the administration of Defendant and the trust estate. (Doc. 17 at 57-58). It is the Agreement that sets forth the duties and powers of the trustees and enunciates the procedures for appointment and removal of trustees, not Defendant. (Doc. 17 at 42-45, 50).

There is no provision in the Agreement for unilateral action by signatories. Defendant, as an employer, could only appoint or remove a trustee by consensus with the other employer-signatories to the Agreement. Even then, Defendant – as an employer – would only have input into the appointment and/or removal of five of the ten trustees. Additionally, if Defendant desired to change or affect the rules and regulations setting forth the trustees' duties, it would have to amend the Agreement by consensus of all other signatories to the agreement. As such,

even when viewed in the light most favorable to Plaintiff, the evidence of record demonstrates that Defendant did not exercise any significant degree of control over the trustees. Indeed, the evidence illustrates that it was the *trustees* who had the sole authority to control the functions of Defendant.

The Agreement states that: "[t]he Trustees shall have general supervision of the operation of this Health and Welfare Fund and shall conduct the business and activities of this Health and Welfare Fund in accordance with this Trust Agreement and applicable law." (Doc. 17 at 51). The Agreement goes on to state that the "trustees shall have the power and authority to use and apply the Trust Fund for the following purposes: to pay or provide for the payment of all reasonable and necessary expenses (i) of collecting the Employer and Employee contributions and payments and other monies and property to which they may be entitled; (ii) of administering the affairs of this Health and Welfare Fund, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties; and (iii) of reimbursement for expenses and the payment of allowances properly and actually incurred in the performance of their duties." (Id. at 51–52).

In addition to demonstrating that the first factor does not apply to Defendant's relationship with the trustees, the above language also makes clear that – under the remaining five factors – Defendant does not supervise the trustees, the trustees do not report to Defendant, the trustees have absolute authority over Defendant, subject to the Agreement's provisions and applicable law, and the trustees receive no compensation or benefits other than reimbursement

related to monies spent in fulfillment of their obligations as trustees. The trustees control Defendant, and the source of this authority to control is the Agreement alone.

Incidentally, the Agreement specifically states that the "Health and Welfare Fund," *i.e.* Defendant,[4] is excluded from the process of appointing and removing trustees:

> (b) When a vacancy occurs as a result of death, incapacity, resignation or removal of an Employer Trustee, the successor Trustee shall be appointed by the Employers as Defined in Section 1.7[5] herein, but excluding any Union Employer as defined in Section 1.7(c) herein and <u>this Health and Welfare Fund</u> as defined in Section 1.7(e) herein.

(Doc. 17 at 44) (emphasis added). Section 1.7(e) provides:

> (e) This Health and Welfare Fund which agrees in writing to make regular contributions and to be bound by the obligations of this Trust Agreement for all of its employees who are eligible for the Health and Welfare Fund.

(Doc. 17 at 37). This language, even viewed in the light most favorable to Plaintiff, excludes the possibility that Defendant exercises the degree of control necessary over the trustees to render the trustees "employees" of Defendant. As such, the trustees cannot be included for purposes of determining whether Defendant meets the employee threshold for the ADA, FMLA or Title VII.

Plaintiff next attempts to meet the threshold requirements for the aforementioned employment statutes by arguing that six consultants utilized by Defendant in the administration

---

[4] "As defined in Section 1.16, Health and Welfare Fund is defined as: 'the entire trust estate of the Western Pennsylvania Teamsters And [sic] Employers Welfare Fund'…Therefore, the Health and Welfare Fund refers directly to the Defendant." (Doc. 19 at 9 n. 3).

[5] Section 1.7, defining "employers" for purposes of the Agreement, also notes at Section 1.7(h) that the list of employers includes the Western Pennsylvania Teamsters and Employers Welfare Fund. Plaintiff attempts to argue that by failing to exclude Section 1.7(h) from the list of employers eligible to appoint trustees, the Agreement allows Defendant a say in appointment of the trustees. Plaintiff's clever argument is belied by the fact that the Agreement frequently refers to the trust fund and Health and Welfare Fund as the Western Pennsylvania Teamsters and Employers Welfare Fund (Doc. 17 at 30 – 31, 39, 44), and Plaintiff also explicitly noted that "Health and Welfare Fund" referred to Defendant. *See* footnote 4, *supra*. As such, Defendant is excluded, even if Section 1.7(h) was not specifically provided as an excluded employer. To interpret Section 1.7(h) as referring to an entity separate and apart from the Health and Welfare fund would run counter to the plain wording of the remainder of the Agreement.

of the trust estate are also "employees" of Defendant. As support for her contention, Plaintiff cites Defendant's alleged right to assign additional projects to the consultants, obligation to monitor the consultants' work, and significant control over hiring of consultants, as well as the consultants' contribution to Defendant's regular business. (Doc. 19 at 7-8). Plaintiff does not identify the six consultants, but merely references Defendant's website. (Id. (citing http://www.wpawelfare fund.com/consultants.htm)). The Court notes that the "consultants" tab on Defendant's website lists the following *seven* entities: (1) Actuary: Buck Consultants; (2) Agent for Legal Process: Charles J. Streiff, Attorney, Wick, Streiff, Meyer, O'Boyle & Szeligo, P.C.; (3) Fund Auditor: Albanese Sinchar Smith & Co.; (4) Fund Accountant: Cathy Gall, Experis Group; (5) Fund I.T. Consultant: Allen Bates Technologies, Inc.; (6) Fund I.T. Consultant: Enkompas; and (7) Fund Custodian: FNB. Western Pennsylvania Teamsters & Employers Welfare Fund, http://www. wpawelfarefund.com/consultants.htm, (last visited Feb. 5, 2016).

In Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992), the Supreme Court established a list of factors to assist with "'drawing a line between independent contractors and employees' hired by a given entity." Faush v. Tuesday Morning, Inc., 808 F.3d 208, 215 (3d Cir. 2015) (quoting Clackamas, 538 U.S. at 445 n. 5). The Darden factors include: (1) "the skill required;" (2) "the source of the instrumentalities and tools;" (3) "the duration of the relationship between the parties;" (4) "whether the hiring party has the right to assign additional projects to the hired party;" (5) "the extent of the hired party's discretion over when and how long to work;" (6) "the method of payment;" (7) "the hired party's role in hiring and paying assistants;" (8) "whether the work is part of the regular business of the hiring party;" (9) "whether the hiring party is in business;" (10) "the provision of employee benefits;" and (11) "the tax treatment of

7

the hired party." Id. at 214 (quoting Darden, 503 U.S. at 323-24). The Supreme Court cautioned that the list of factors was not exhaustive, and that no one factor was determinative. Id. In fact, the dispositive factor under Darden is not even which of two entities is *the* employer. Id. Although the Court has traditionally looked to whether a particular entity paid salaries, controlled hiring and firing, and supervised daily activities, Id. at 214 (citing Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013)), two entities may be considered "co-employers" or "joint employers." Id. at 215 (citing Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997); Williamson v. Consol. Rail. Corp., 923 F.2d 1344, 1349 (3d Cir. 1991)).

In her argument, Plaintiff cites no specific factual averments with respect to any particular consultant utilized by Defendant; instead, Plaintiff generally claims that (1) each consultant was "permanent" or "ongoing," (2) Defendant had "discretion" over the consultants, (3) Defendant had an obligation to monitor the consultants' work, (4) the consultants' work comprised Defendant's regular business, (5) the consultants were hired specifically for professional services, and (6) Defendant exercised a "significant amount of control" over the consultants. (Doc. 19 at 7-8). With respect to Plaintiff's point regarding the ongoing nature of the consultants' work, the evidentiary record before the Court shows that each of the consultants' contracts articulated a defined period of engagement, which automatically renewed, unless one of the parties determined to cancel the contract. (Doc. 17 at 91-161). As to Plaintiff's assertion of "discretion" and "significant" control over the consultants, the contracts with Buck Consultants, Albanese Sinchar Smith & Co., and Enkompas all explicitly state that they have been engaged as independent contractors. (Id. at 91-96, 111-48). See Faush, 808 F.3d at 217 (characterization of status as "independent contractor" is important). The contracts with Wick, Streiff, Meyer, O'Boyle & Szeligo, P.C., and Enkompas further provide that Defendant has no

supervisory authority over their employees, or the appointment of particular employees to particular work assignments. (Id. at 111-38, 149-55). All consultants had pre-set fee schedules. (Id. at 91-161). See Faush, 808 F.3d at 216 (the method by which independent contractors are typically compensated). All consultants handled the payroll and benefits for their respective employees. (Id. at 91-161). Defendant handled the taxes for only its four claimed employees. (Id. at 162-93).

Additionally, each consultant was hired to provide a specific professional service: Buck Consultants was to provide actuarial service; Wick, Streiff, Meyer, O'Boyle & Szeligo, P.C. was on retainer for purposes of providing legal counsel for specifically enumerated legal issues; Allen Bates Technologies, Inc. granted Defendant a license to use customized data processing software; Enkompas was engaged for software/technology management and support with respect to specifically enumerated systems; and FNB was merely a trust company providing Defendant with an institutional investment custodial account. While each of these consultants performs some service necessary for the proper functioning of Defendant's day-to-day business, the agreements entered into with each party were not of the type sufficient to create an employment relationship; each agency was hired to perform discrete tasks based upon specialized skill sets, and oversaw their respective employees' work in completion of assigned tasks. Faush, 808 F.3d at 216-17.

The only exception, here, is Cathy Gall. Ms. Gall is a fund accountant hired by Experis Group to perform general accounting duties for Defendant. (Doc. 17 at 100). While Experis Group interviewed and hired Ms. Gall on behalf of Defendant and handled Ms. Gall's pay and benefits, Experis Group's contract with Defendant explicitly stated that Ms. Gall could be removed at Defendant's request, that Defendant was to provide Ms. Gall with the resources and

9

workspace necessary to perform her assignments, that Defendant was responsible for supervising and controlling Ms. Gall, and that Defendant was to pay Experis Group based upon the hours billed by Ms. Gall. (Doc. 17 at 97-101). A similar arrangement was sufficient in Faush for the Court of Appeals for the Third Circuit to find that a traditional employment relationship existed, as opposed to that of an independent contractor. Faush, 808 F.3d at 215-18. As such, while the facts of record – even when viewed in the light most favorable to Plaintiff – demonstrate only the existence of independent contractor status for Buck Consultants, Wick, Streiff, Meyer, O'Boyle & Szeligo, P.C., Albanese Sinchar Smith & Co., Allen Bates Technologies, Inc., Enkompas, and FNB, the facts are insufficient to defeat summary judgment as to Ms. Gall's employment status. The Court concludes that one of the consultants might, therefore, be properly counted towards meeting Plaintiff's threshold requirements under the ADA, FMLA and Title VII.

Lastly, Plaintiff claims that she meets the threshold requirements for the ADA, FMLA and Title VII, because Defendant is a division of the IBT – an entity with thousands of employees, nationally. (Doc. 19 at 8-10). Defendant and IBT purportedly "work together as a single company." (Id. at 9). For support, Plaintiff cites to the IBT website, which notes that "the local [unions] benefit from the expertise and assistance of the International Union, and of the various conferences and councils in the union's structure." (Id. (citing https://teamster.org/about/teamsters-structure)). Plaintiff goes on to note that Defendant is a part of the IBT's defined organizational structure. (Id. (citing Doc. 21 at 127)). Additionally, Plaintiff claims that the Agreement, and the IBT's influence in appointment of trustees, evidences a "high degree of unity" between Defendant and the IBT. (Id. at 8-9).

Without first resorting to review of the relevant legal standard for determining the degree of unity between Defendant and the IBT, the Court must address the immediate flaws in

10

Plaintiff's arguments. First, there is nothing contained in the cited portion of the IBT's website which refers to Defendant, explicitly or otherwise. No evidence has been presented which supports Plaintiff's assertion that Defendant is a local union or union affiliate. Second, the organizational chart referenced by Plaintiff for additional support makes no mention of Defendant or any other health or welfare fund. Plaintiff fails to demonstrate how Defendant fits into the IBT's organizational structure. Third, if it is Plaintiff's assertion that Defendant and the IBT share a "high degree of unity" because the IBT is a signatory to the Agreement as well as a party with influence over the appointment of certain trustees, then every union and non-union employer signatory to the Agreement would have a "high degree of unity" with Defendant. This clearly is not the case.

Ultimately, both parties agree that the Third Circuit's holding in Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003), dictates the disposition of the matter. When determining whether two business entities should substantively consolidated, the Court must look to: "(1) 'the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters)'; (2) 'whether they present themselves as a single company such that third parties dealt with them as one unit'; (3) 'whether a parent company covers the salaries, expenses, or losses of its subsidiary'; and (4) 'whether one entity does business exclusively with the other.'" Ugorji v. N.J. Envtl. Infrastructure Trust, 529 F.App'x 145, 150 (3d Cir. 2013) (quoting Nesbit, 347 F.3d at 87). With the exception of sharing a portion of its name with the IBT, and the IBT's influence in affecting the appointment of five of Defendant's ten trustees, the evidence of record adduced by Plaintiff would be insufficient to persuade a reasonable jury that Defendant and the IBT share such a high degree of unity as to be one and the same – even when the evidence is viewed in the

11

light most favorable to Plaintiff. As such, summary judgment must be granted with respect to Defendant in this matter.

Based upon the foregoing, the evidence of record demonstrates that Defendant's trustees, Defendant's consultants, with the exception of Ms. Gill, and the thousands of employees of the IBT cannot be used to meet Plaintiff's threshold requirements under the ADA, FMLA and Title VII. Accordingly judgment will be granted in favor of Defendant with respect to all counts contained in Plaintiff's Amended Complaint.

## II. ORDER

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (**Doc. 14**) is **GRANTED**. IT IS FURTHER ORDERED that judgment shall be entered in favor of Defendant as to all counts in Plaintiff's Amended Complaint (**Doc. 12**).

March 16, 2016

                 s/Cathy Bissoon
                 Cathy Bissoon
                 United States District Judge

cc (via ECF email notification):

All counsel of record.